# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **GREGORY WILLIAMS (#K-52712),** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 09 C 0952 |
| v. ) | |
| ) | Hon. Blanche M. Manning |
| **COUNTY OF COOK, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Williams, currently a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, officials at the Cook County Jail, violated his constitutional rights by failing to protect him from assaults by fellow detainees on two occasions, wrongfully placing him in disciplinary segregation, acting with deliberate indifference to his medical needs, and failing to respond to his grievances. This matter is before the court for ruling on the defendants' motion to dismiss the complaint for failure to state a claim. For the reasons stated in this order, the motion is granted. However, the plaintiff will be given the opportunity to submit an amended complaint concerning his medical claim.

## STANDARD OF REVIEW

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to " 'give the defendant fair notice of what the ... claim is and the grounds

upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, (1957)). To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), the plaintiff must only state his basic legal claim and provide "some indication ... of time and place." *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted).

In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.,* 550 U.S. at 563 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Norfleet v. Vale*, No. 05 C 0926, 2005 WL 3299375, at *1 (N.D. Ill. Dec. 5, 2005) (Zagel, J.). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556. Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*, 550 U.S. at 555. Furthermore, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See, e.g., Kolupa v. Roselle Park*

*Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996) (citations omitted).

## FACTS

The plaintiff, currently a state prisoner, was a pretrial detainee at the Cook County Correctional Center at all times relevant to this lawsuit. Defendants Erica Queen, Joseph Giunta, Robert Forbes, Neal Urteaga, Darryl Howell, and Peter Giunta are correctional officers at the jail. Defendant Michael Miller is the Chief of Security at the jail. Defendants Stanley Janus and Tyree Currie were, respectively, the Superintendents of the jail's Divisions Five and Six. Defendant Salvador Godinez is the jail's director.

The plaintiff alleges the following facts, which must be accepted as true for purposes of the motion to dismiss: In May 2008, the plaintiff told his attorney and unnamed supervisors that his life was in danger because he had already been stabbed twice before and because gang members were forcing him to "hold knives" for them. The plaintiff also spoke to two physicians [who are not named as defendants] about his predicament.

The plaintiff was temporarily moved to Cermak Hospital's psychiatric unit; however, the next day he was returned to Division Ten, a maximum security unit. The plaintiff therefore signed himself into protective custody.

The plaintiff remained in protective custody for two weeks, until someone recognized him there. The other inmate warned the plaintiff that if he did not leave the unit, he would be "sent away in a stretcher." The plaintiff reported the threat to an unnamed supervisor, who told him that the only thing the plaintiff could do was to sign

3

himself out of the protective custody unit. Accordingly, the plaintiff signed himself out of protective custody and returned to Division Ten.

Upon returning to the maximum security unit, the plaintiff became so terrified of being attacked that he barricaded himself in his cell on an unspecified date. While barricaded in his cell, the plaintiff went without his psychotropic medications. Consequently, he began to feel suicidal. The plaintiff spoke to a jail health care provider and to administrators, including defendant Godinez and an individual named Romero about his reasons for refusing to leave his cell. [Romero is not named as a defendant.]

Godinez vowed that if the plaintiff agreed to come out of his cell, he would be reclassified as a minimum security inmate and transferred to protective custody. The plaintiff evidently agreed, as he was thereafter sent to the health care unit for a psychological evaluation. Afterwards, as promised, the plaintiff was transferred to the minimum security protective custody unit, where he finally "felt safe."

On October 20, 2008, the plaintiff was transported to court along with general population inmates. The plaintiff contends that his security status dictated that he not commingle with general population inmates. One of the inmates (Hoskins) who accompanied the plaintiff to court attacked him. The plaintiff does not identify any of the officers present at the time the assault occurred.

The plaintiff went to the health care unit for treatment of his injuries. However, because he had an altercation with the nurse, he refused medical attention. Upon returning to his housing unit, he was issued a disciplinary report for assault (presumably in connection with the Hoskins incident) and placed in segregation for ten days. While in the segregation unit, the plaintiff went without his psychotropic medications and was

4

exposed to general population inmates. The plaintiff does not allege that the general population inmates threatened or harmed him.

When Romero learned that the plaintiff was in segregation, he ordered defendant Currie to release him and to return him to the minimum security protective custody unit. Romero vouched that the plaintiff was not at fault for the fight with Hoskins. Currie failed to release the plaintiff as directed. The plaintiff continued to go without his medication during his ten days in the segregation unit.

On November 2, 2008, the plaintiff experienced a "schizophrenic episode" and attempted to hang himself. He was taken to the psychiatric unit for another evaluation, prescribed medication, and discharged. However, when he arrived at his housing unit, he received another disciplinary report and was sent back to segregation for destroying state property (apparently the sheets he had used in his suicide attempt). The plaintiff received no responses to his ensuing grievances.

The plaintiff left the segregation unit twenty-five days later. At that time, he was reclassified as a maximum security inmate and sent back to Division Ten. He was assigned a cellmate who belonged to a gang [but again does not indicate that he was harmed, or even threatened, by his cellmate.]

On January 12, 2009, the plaintiff had another court appearance. While at court, the plaintiff spotted Hoskins, the detainee who had previously attacked him. The plaintiff saw Hoskins speaking to the other detainees who were in the bullpen with the plaintiff.

After the plaintiff's court hearing, he was placed in a "transition bullpen" while he waited for an officer to take him back to his housing unit. Twenty to twenty-five detainees approached the plaintiff and asked him what his gang affiliation was. When the

plaintiff responded that he did not belong to any gang, the other detainees struck, kicked, and stabbed him. The plaintiff was hospitalized for his injuries.

The plaintiff initiated this action in February 2009. By Minute Order of October 20, 2009, the court appointed an attorney to represent the plaintiff and directed counsel to file an amended complaint if he was able to do so consistent with his obligations under Fed. R. Civ. P. 11. On March 24, 2010, the court granted counsel's motion to withdraw from the case. Accordingly, the court reinstated the defendants' motion to dismiss the complaint for failure to state a claim and entered a briefing schedule. *See* Minute Entry of March 24, 2010. The matter is now fully briefed and ready for ruling.

## **DISCUSSION**

Even accepting the plaintiff's factual allegations as true, the complaint does not articulate colorable causes of action under 42 U.S.C. § 1983 against the movants with regard to either attack, the plaintiff's placement in administrative segregation, or the denial of his grievances. However, the plaintiff may have a tenable Fourteenth Amendment claim against the individuals who allegedly denied him his psychotropic medications. Accordingly, the complaint will be dismissed with leave to file an amended complaint pertaining to the plaintiff's medical claim.

**I.     The Plaintiff's Failure to Protect Claim**

    **A.     The First Alleged Attack**

Neither correctional officers nor supervisory officials can be held liable for the first attack under the facts alleged. As the defendants concede, the Constitution imposes on jail officials a duty to "take reasonable measures to guarantee the safety of the inmates and to protect them from harm at the hands of others." *Boyce v. Moore*, 314 F.3d 884,

889 (7th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). In order to state a Fourteenth Amendment claim, the plaintiff must allege that: (1) he was incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk. *Id.*

          **1.**     **Objective Prong**

The first prong of a failure to protect claim–considered the objective prong–requires a plaintiff to show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Brown*, 398 F.3d at 911. To satisfy this prong, a plaintiff must demonstrate not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Id.* "When [Seventh Circuit] cases speak of a 'substantial risk' that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff.'" *Brown*, 398 F.3d at 911. This general definition of "substantial risk" includes "risks so great that they are almost certain to materialize if nothing is done." *Id.*

Here, even viewing the facts in the light most favorable to the plaintiff, the complaint does not support an inference that correctional officials acted with deliberate indifference to a substantial risk of known harm. Although the plaintiff was in protective custody status at the time of the attack, it is undisputed that he never expressed any concerns for his safety on the day of the attack. Actual knowledge cannot be imputed to a

prison official if the plaintiff himself was unaware of a specific threat. *Guzman v. Sheahan*, 495 F.3d 852, 857-58 (7th Cir. 2007).

Moreover, the mere presence of general population inmates in the plaintiff's environs was not, alone, enough to create an objectively serious risk of harm. Regrettably, "[p]risoners are dangerous (that's why many are confined in the first place) . . . . Some level of brutality and sexual aggression among them is inevitable no matter what the guards do." *Birch v. Jones*, No. 02 C 2094, 2003 WL 21210107, *3 (N.D. Ill. May 21, 2003) (Manning, J.), quoting *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991); *see also Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 519 (7th Cir. 2002) ("an unfortunate random act of violence in a prison ... does not impose liability on prison officials"); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) ("prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more. Guards cannot turn away persons committed by the courts; nor do individual guards have any control over crowding and other systemic circumstances"). The plaintiff's conclusory assertions aside, the complaint does not suggest dangers so pervasive as to render the defendants liable for the attack on the plaintiff.

### 2. Subjective Prong

In order to satisfy the subjective prong, a plaintiff must show that the defendant acted with deliberate indifference to the substantial risk of serious harm. *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913. The defendant "must both be aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913;

8

*Riccardo*, 375 F.3d at 525. The subjective prong has two subparts: (a) knowledge of the risk, *Brown* at 913, and (b) a disregard of that risk. *Id.* at 916. Although this is a subjective test, it may be proven through circumstantial evidence. *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (internal citation omitted). The relevant inquiry is whether correctional officials actually knew about the danger that the plaintiff faced, not whether a reasonable official should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

In the case at bar, there is no allegation that the plaintiff ever expressed any concerns for his safety to the transport officer. In fact, the plaintiff has not even identified the officer [or officers] in question. In the absence of any allegation that the plaintiff specifically apprised a named defendant that inmate Hoskins posed a threat, no knowledge can be imputed to the correctional staff.

In any event, even if the plaintiff should not have been transported with general population inmates, he has failed to state facts showing deliberate indifference. Group movement to the court is a regular task for correctional officials at a jail.

> Guards have no control over the temperament of the inmates they
> supervise, the design of the prisons, the placement of the prisoners, and the
> ratio of staff to inmates. Some level of brutality and sexual aggression
> among them is inevitable no matter what the guards do. Worse: because
> violence is inevitable unless all prisoners are locked in their cells 24 hours
> a day and sedated (a "solution" posing constitutional problems of its own)
> it will always be possible to say that the guards "should have known" of
> the risk. Indeed they should, and do. Applied to a prison, the objective
> "should have known" formula of tort law approaches absolute liability,

rather a long distance from the Supreme Court's standards in *Estelle* and its offspring.

*McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991), overruled on other grounds by *Farmer*, supra, 511 U.S. at 836-37. "All that can be expected is that guards act responsibly under the circumstances that confront them." *Riccardo*, 375 F.3d at 525.

Certainly, the court does not condone transporting inmates without taking security considerations into account, if that is what happened. If there is a rule against commingling protective custody and general population inmates during court visits, then correctional officials' purported heedlessness is no cause for commendation. But neither negligence nor gross negligence implicates the Constitution. *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002) (citations omitted). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006), quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998). "Proving deliberate indifference "requires more than a showing of negligent or even grossly negligent behavior... . [T]he corrections officer must have acted with the equivalent of criminal recklessness." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008), quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). Inmates with high security classifications are not necessarily enemies to inmates of lower-ranking security. If the plaintiff wishes to sue the defendants for negligence, he must do so in state court.

In sum, the complaint provides no basis for constitutional liability with regard to the sudden, unexpected attack by a prisoner not known to be one of the plaintiff's avowed enemies. A generalized possibility of jail violence, rather than a specific risk of serious

harm, does not implicate the Fourteenth Amendment. The plaintiff has no tenable cause of action under 42 U.S.C. § 1983 with respect to the first attack. Accordingly, that claim is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B. The Second Attack

For the same essential reasons, the plaintiff has failed to articulate a viable cause of action against the defendants with regard to the second attack. At the time of the second attack, the plaintiff was no longer in protective custody status. It is most regrettable that the plaintiff had been denied his psychotropic medication and that the denial may have triggered his suicide attempt; however, the fact remains that he had been moved to the maximum security unit due to his own misconduct. Furthermore, the plaintiff presumably had the option of signing himself into protective custody, as he states that he did so the first time he was housed in Division Ten against his wishes.

Moreover, the plaintiff was once again assaulted by inmates who were evidently not known to be enemies. It is not surprising that many detainees at the jail belong to gangs. Again, while it is most unfortunate that the plaintiff was attacked by fellow inmates, the court discerns no basis for liability under the Fourteenth Amendment for the unforeseen disturbance in the courthouse bullpen. This is doubly true because the plaintiff has not identified a defendant responsible for the perceived security breach. Hence, the plaintiff's second failure-to-protect claim is dismissed as well. Because the court finds that the plaintiff has no constitutional cause of action regarding either alleged attack, a discussion of individual and official capacity is unnecessary.

## II. The Plaintiff's Disciplinary Due Process Claim

The plaintiff is not entitled to damages for the ten days he spent in the segregation unit. The plaintiff seems to maintain that he was wrongfully placed in segregation for fighting with inmate Hoskins when he had been the victim of an attack; he further contends that he remained there even after Romero ordered that he be released. The court finds that the plaintiff has no constitutional claim arising from his brief detention in pre-hearing segregation.

The plaintiff had no right to remain in the general population prior to a disciplinary hearing as administrative detention of a pretrial detainee while he is awaiting a hearing is constitutionally permissible. As noted by the Seventh Circuit:

> Due process permits an arrest without a previous hearing because it is dangerous to allow a person who the police have probable cause to believe has committed a crime to roam at large while awaiting a hearing. It is equally dangerous to allow a prisoner who the guards have probable cause to believe has violated a disciplinary rule to roam at large in the general jail population.

*Holly v. Woolfolk*, 415 F.3d 678, 681 (7th Cir. 2005).

There is no indication that the plaintiff was punished without due process. "[A] person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged." *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999), *relying on Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Nevertheless, a person lawfully detained in pretrial confinement because there is probable cause to believe that he has committed a crime is subject to certain restrictions on his liberty. *Id.* at 1003. "The government also has legitimate interests that stem from its need to manage the facility in which the individual is detained." *Rapier*, 172 F.3d at 1003, *quoting Bell*,

12

441 U.S. at 540. Thus, a pretrial detainee can be punished for misconduct that occurs while he is awaiting trial in a pretrial confinement status. Although correctional officials have "considerable leeway" to punish a pretrial detainee for misconduct committed while in pretrial custody, that punishment can be imposed only after affording the detainee some sort of due process. *Rapier*, 172 F.3d at 1004-1005.

There is no allegation that the plaintiff was denied a hearing (or that he was ultimately released without a hearing). The hearing the plaintiff subsequently received (or the dismissal of the assault charge without a hearing) was all the process that was due him. Because the disciplinary report was dismissed, it is irrelevant whether the underlying charge was false. If Currie failed to release the plaintiff from segregation as directed, his inaction was inexcusable. However, the plaintiff's ten-day stint in administrative segregation is too *de minimis* to rise to the level of a constitutional violation. The plaintiff's disciplinary due process claim is therefore dismissed.

**III.     The Plaintiff's Claim Concerning a Lack of Response to His Grievances**

The plaintiff asserts that he received no response to the grievances he filed when he was placed in segregation. However, Illinois' statutory grievance procedures do not create a protected interest. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Any right to a grievance is a procedural one, not substantive. *Id.* Correctional officials' failure to process the plaintiff's grievances is therefore not actionable under Section 1983. The plaintiff's grievance claim–which is again asserted against unnamed defendants–is accordingly dismissed.

13

## IV. The Plaintiff's Medical Claim

Finally, the plaintiff may have a justiciable claim with respect to his allegation that he was denied psychotropic medications on multiple occasions, an issue not addressed in the parties' briefs. Pretrial detainees have a right to receive reasonable medical treatment for their serious medical needs, including mental health needs. *See, e.g., Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Sanville v. McCaugherty*, 266 F.3d 724, 734 (7th Cir. 2001). However, the plaintiff has not indicated who is responsible for the alleged denial of his psychiatric medications. Although the complaint and parties section of the complaint list multiple defendants, only Currie and Godinez are mentioned anywhere in the body of the complaint–and neither of those two defendants is alleged to have personally denied the plaintiff medical care or access to care. The complaint is entirely devoid of any allegations whatsoever concerning the other defendants.

It should be noted that Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 does not create collective or vicarious responsibility. *Id.* Supervisors cannot be held liable for the errors of their subordinates. *Birch v. Jones*, No. 02 C 2094, 2004 WL 2125416, at *6 (N.D. Ill. Sep. 22, 2004) (Manning, J.), *citing Pacelli v. DeVito*, To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.

14

They must in other words act either knowingly or with deliberate, reckless indifference." *Id.*

As noted *supra*, even under basic notice pleading, a complaint must contain sufficient facts to give the defendants fair notice of the claims against them and a reasonable opportunity to form an answer. *Pratt v. Tarr*, 464 F.3d 730, 732 (7th Cir. 2006) (citations omitted). The court need not presume facts not alleged. *Bell Atlantic Corp.*, 550 U.S. at 563, n.8 (citations omitted).

Merely naming a defendant in the caption is not enough to state a claim. *See, e.g., Anderson v. City of Chicago*, 90 F. Supp. 2d 926, 929 (N.D. Ill. 1999); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption"); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints"). To state a cause of action against an individual, there must be an allegation of direct responsibility for the alleged constitutional deprivation. Consequently, in his amended complaint, the plaintiff must not only name the defendant(s) specifically involved in the alleged denial of his medications, but also set forth the basic facts indicating how each defendant named in the amended complaint was personally and directly responsible.

The plaintiff is advised that he cannot pursue a medical indifference claim unless he availed himself of administrative grievance procedures prior to filing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion

requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner,* 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

The plaintiff is additionally cautioned that he must act reasonably quickly if he intends to name new defendants. The statute of limitations for Section 1983 actions filed in Illinois is two years. *See* 735 ILCS § 5/13-202; *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001), *citing Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). The plaintiff cannot avail himself of Rule 15(c)'s provisions allowing for "relation back" to the original complaint. In this circuit, a plaintiff cannot invoke the relation back principles of Rule 15(c) to name new defendants after the statute of limitations has expired. *See Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993); *see also Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980). The plaintiff must identify the individuals who denied him medication before the statute of limitations extinguishes that claim.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the complaint for failure to state a claim [#58] is granted. The complaint is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal of the plaintiff's claims concerning a failure to protect him

from assault, denial of his grievances, and wrongful discipline are dismissed with prejudice. The plaintiff's medical claim is dismissed without prejudice to submitting an amended complaint for the court's review under 28 U.S.C. § 1915A.

The plaintiff is granted thirty days in which to submit an amended complaint on the court's required form limited to his claim that he was denied psychotropic medications. The plaintiff must write both the case number and the judge's name on the amended complaint, sign it, and return it to the Prisoner Correspondent. As with every document filed with the court, the plaintiff must provide an extra copy for the judge; he must also submit a service copy for each defendant named in the amended complaint.

The plaintiff is cautioned that an amended pleading supersedes the original complaint and must stand complete on its own. Therefore, all allegations against all defendants must be set forth in the amended complaint, without reference to the original complaint. Any exhibits the plaintiff wants the court to consider in its threshold review of the amended complaint must be attached, and each copy of the amended complaint must include complete copies of any and all exhibits. The clerk will provide the plaintiff with an amended civil rights complaint form and instructions along with a copy of this order.

Enter: *Blanche M. Manning*
BLANCHE M. MANNING
United States District Judge

Date: August 19, 2010